UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX CHARALAMBOUS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 22-cv-00216-EMC   (EMC)<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Docket Nos. 49, 56 |

This matter comes before the Court on Plaintiffs' motion for preliminary approval of a class and representative action settlement. Plaintiffs allege that Defendants failed to reimburse them and the class of California-based Liberty Mutual employees for their reasonable and necessary business expenses incurred while working from home during the pandemic. Plaintiffs allege claims under Cal. Labor Code § 2802, Bus. & Prof. Code § 17200 *et seq.* and PAGA (Cal. Labor Code §§ 2698-2699.5.) The terms of the settlement are memorialized in the Settlement Agreement and Release of Class and Representative Action Claims ("Settlement") filed concurrently with Plaintiffs' motion. Having considered the Settlement Agreement and the arguments and evidence submitted by counsel, the Court hereby grants Plaintiffs' motion and Orders as follows:

The Court finds that the proposed Settlement Class meets the requirements for certification under Fed. R. Civ. P. 23 for purposes of the proposed Settlement only.

The Court also finds that the proposed Settlement falls within the range of reasonableness and appears to be presumptively valid. The resolution set forth in the Settlement Agreement appears to be fair, adequate, and reasonable to the Class. The gross settlement amount in the

proposed settlement is conservatively 77.3% of potential recovery of claims at trial (taking Plaintiffs' higher estimation of per-month at-home costs relative to Defendants' lower estimation as true), and the net settlement amount is 46.3% of the that recovery figure.[1]  These figures are in line with or above percentages approved in similar class settlements, including those involving alleged wage and hour violations.  *See, e.g., In re Mego Fin. Corp*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a settlement amount of one-sixth of the potential recovery to be fair and adequate under the circumstances); *Glass v. UBS Fin. Serv., Inc.*, 2007 WL 2216862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour class action for 25 to 35% of the claimed damages to be reasonable); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1337 (N.D. Cal. 2014) (finding about half of maximum recovery in wage and hour dispute reasonable); *cf. Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2023 WL 2918679, at *3 (E.D. Cal. Apr. 12, 2023) (gross settlement amount constituting 8.3% of projected maximum recovery for wage and hour claims characterized as "lower than is typically approved"); *Almanzar v. Home Depot U.S.A., Inc.,* 2022 WL 2817435, at *12 (E.D. Cal. July 19, 2022) (8% lower than typically approved).

Further, the strength of Plaintiffs' case was undermined during discovery, suggesting propriety of settling the case.  Specifically, Plaintiffs learned in discovery that Liberty Mutual provided employees with an application, Microsoft Teams, allowing employees to use internet calling that does not require use of a phone, thus undermining potential recovery for phone costs. *See* Mot. at 12 (Lauinger Decl. ¶ 11.)  And further, that the company provided equipment such as laptops, monitors, headsets, and the like, thus undermining potential recovery for costs associated with additional equipment.  *Id.*  Further, not all employees submitted reimbursement requests regarding internet costs, though they purportedly could have, which might again impaired

---

[1] The parties estimate that each class member would receive a gross settlement payment of approximately $56.00 per work month and $33.50 per month after netting for fees and costs (assuming the Court grants those requests).  *See* Mot. at 13-14.  Plaintiffs estimated per-month recovery at trial would be $64.43 per month (internet) and $8.00 per month (electricity) ($72.43). Mot., Lauinger Decl. ¶ 13.  Liberty Mutual's estimation was lower though not far off at $49.99 per month (internet) and $15.00 (utilities) ($64.99).  *See* Docket No. 1-1 ¶ 18.

recovery. *Novak v. Boeing Co*, 2011 U.S. Dist. LEXIS 83031, *9-10 (C.D. Cal. July 20, 2011 (expenses voluntarily incurred are not reimbursable under Labor Code § 2802). Additionally, Plaintiffs' counsel learned through discovery Liberty Mutual did not require employees set aside space to use exclusively for business. Mot. at 13. Thus, the parties established there were significant litigation risks in going forward.

The Court also finds that there is no evidence of collusion or sacrificing of the interests of the class in entering into the proposed settlement. There are no "red flags." The settlement was a result of mediation before retired judge, Hon. Lisa Cole; the presence of an experienced mediator evidences a non-collusive settlement and affords a presumption of fairness. *See Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Vianu v. AT&T Mobility LLC*, No. 19-CV-03602-LB, 2022 WL 16823044, at *7 (N.D. Cal. Nov. 8, 2022) (finding that negotiations aided by an experienced mediator weighed in favor of settlement approval).

The attorney's fees allowed in the Agreement do not negate this presumption of fairness. The Settlement Agreement allows for Plaintiffs' counsel to seek 33.3% of the settlement fund in fees. Settlement Agreement §§ 5.1, 5.7. This amount is higher than the benchmark percentage in the circuit of 25%. *See, e.g.*, *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."). However, although the settlement permits class counsel to seek 33.3% of the fund, counsel represents that it intends to request only 30% of the fund. Mot. at 4. And further, 30% reflects a negative lodestar multiplier of 0.96, supporting the propriety of that amount.[2] Additionally, the Agreement does not prevent Defendants from opposing the settlement amount requested, but rather serves to cap the amount Class Counsel can seek for approval by this Court.

---

[2] $3,125,000 x .3 (1,040,625) / $978,125.

3

*See* Settlement Agreement § 5.7.  Accordingly, the Agreement does not contemplate that counsel will receive a disproportionate distribution of settlement or provide for a "clear sailing arrangement" regarding fees.  Additionally, the settlement is non-reversionary, which also indicates a lack of collusion.  *See Briseno*, 998 F.3d at 1023.

The caveat, however, as the Court noted during its hearing for preliminary approval of the settlement is that Plaintiffs should be prepared at the final approval hearing to justify the somewhat heightened service fee to Plaintiffs seek to award representative plaintiffs.  The Settlement Agreement grants each Class Representative, Mr. Charalambous and Mr. Pullen, a $10,000 representative service award ($20,000 in the aggregate).  Settlement Agreement § 8.2.  Service awards are permissible and do not inherently render a settlement unfair or unreasonable; however, the awards must be "reasonable" and the Court "must evaluate the[] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)).

This award is on the high end of incentive awards.  An incentive award of $5,000 is considered 'presumptively reasonable' in this District."  *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 4394401, at *9 (N.D. Cal. Sept. 13, 2019), *aff'd*, No. 19-17073, 2019 WL 7602362 (9th Cir. Dec. 20, 2019).  On the other hand, awards of $10,000 to $25,000 are considered high.  *See Harris*, 2012 WL 381202, at *7 ("[I]ncentive payments of $10,000 or $25,000 are quite high and . . . as a general matter, $5,000 is a reasonable amount.").  The Court must be satisfied that the award to class representatives reflects their time and effort.  *See Staton*, 327 F.3d at 977.  The Court notes that risk imposed to employees in suits against employers may justify an increased service award.  However, Plaintiffs should be prepared to justify the upward departure during the final approval hearing.  The Court reserves the right to decrease the amount

awarded at that time.

As to proposed notice, the Court directed Plaintiffs to make modifications to the proposed notice during the preliminary approval hearing. *See* Docket No. 58 (February 22, 2024, motion hearing minutes). Specifically, Plaintiffs were directed that: (1) notice should be provided to class members via email in additional to postal mail when email is available; (2) language in email notice should be submitted to the Court for review; (3) notice statements should highlight that money is to be provided to class members on the first page of the document and with emphasis; and (4) a reminder should be sent out to class members if checks go uncashed. The Court finds that the proposed notice, as modified by the addendum submitted by parties at Docket No. 56, adequately addressed the Court's concerns stated during the preliminary approval hearing. The this end, the Court finds the proposed notice, as modified by Docket No. 56,clearly and concisely states, in plain, easily understood language (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The class notice describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard.

It is hereby ordered that:

1. Preliminary Approval of the Settlement herein is **GRANTED**.
2. The proposed Settlement Class is conditionally certified for purposes of Settlement.
3. Plaintiffs Alex Charalambous and Brian Pullen are appointed Class Representatives.
4. Clapp & Lauinger LLP is appointed Class Counsel.
5. ILYM Group, Inc. is appointed Claims Administrator.

5

6. The Parties and the Claims Administrator are authorized and directed to mail the Class Notice in accordance with the terms of the Settlement, as modified by the Addendum to Settlement Agreement and Release of Class and Representative Action Claims, Docket No. 56.

7. A final approval and fairness hearing is set for **August 22, 2024** at **1:30 p.m.**.

**IT IS SO ORDERED**.

Dated: March 15, 2024

_____
EDWARD M. CHEN
United States District Judge